# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID BIRNBACH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. |
| v. ) | 14-11651-FDS |
| ) | |
| ANTENNA SOFTWARE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER ON
## MOTION TO DISMISS

**SAYLOR, J.**

This case involves a dispute arising out of a termination of employment. Plaintiff David Birnbach alleges that his former employer, defendant Antenna Software, Inc., failed to pay commissions and severance owed to him when he was terminated by the company. The complaint alleges claims under the Massachusetts Wage Act and for breach of contract, unjust enrichment, quantum meruit, and wrongful termination. Jurisdiction is based on diversity of citizenship.

Defendant has moved to dismiss, in part, Counts 1, 2, and 3 of the amended complaint. Plaintiff does not oppose the motion as to the commission-related portions of Counts 1 and 3, but opposes the motion as to Count 2. For the reasons set forth below, the motion will be granted.

**I.     Background**

The following facts are presented as stated in the complaint.

David Birnbach is a citizen of Massachusetts. Antenna Software, Inc., is a Delaware corporation with a principal place of business in New Jersey.

In August 2003, Vaultus Mobile Technologies, Inc., a mobile software company, hired Birnbach as Senior Vice President of Sales and Marketing. Birnbach signed an employment agreement that provided that "[i]n the event that your employment is terminated by the Company without Cause . . . , you shall be entitled to be continued to be paid your then current salary for a period of three (3) months following such termination, as and when the same would otherwise have been payable to you (the 'Severance Period')." In 2004, Vaultus promoted Birnbach to Chief Executive Officer.

On March 29, 2010, Antenna Software, Inc., acquired Vaultus. Vaultus became a wholly-owned subsidiary of Antenna Software, operating under the name Antenna Vaultus. The Chief Executive Officer of Antenna Software offered to pay Birnbach more favorable terms for commissions than the company's standard commission plan in order to induce him to remain with the company. Birnbach agreed to become Vice President of Sales for Antenna Vaultus under the terms of the "David Birnbach Salary and Sales Incentive Compensation Plan." (*See* Compl., Ex. A). The Compensation Plan provided, among other things, for twelve weeks of severance pay at 100 percent of base salary and six months of health care coverage in the event that Antenna Software terminated Birnbach's employment without cause. It also included rates for commissions and provided that Antenna Software would pay him commissions "even if [Birnbach] is involuntarily terminated." (Compl., Ex. A at 3).

From March 29, 2010, to April 4, 2011, Birnbach closed a number of deals, the total contract value of which was approximately $5.9 million.

On April 4, 2011, executives from Antenna Software informed Birnbach that it was terminating him without cause. According to the complaint, Birnbach was very close to closing

a lucrative deal with PNC Bank on which he had worked for five months. Within weeks of Birnbach's termination, Antenna Software did in fact close the deal.

On June 29, 2011, Birnbach, through his attorney, sent a letter to Antenna Software's CEO requesting payment of wages owed to him. From June 2012 to September 2013, Birnbach received monthly commission checks from Antenna Software that totaled $39,982.97. However, Antenna Software did not pay any severance, and Birnbach has calculated that it still owes him $399,551 in commissions.

On April 2, 2014, plaintiff Birnbach submitted a complaint for unpaid wages with the Office of the Attorney General, and filed a complaint in this Court against defendant Antenna Software. On April 29, 2014, he filed an amended complaint.

On May 13, 2014, defendant moved to dismiss Counts 1 and 3 as they relate to commissions from the PNC Bank deal, which plaintiff does not oppose, and Count 2, which plaintiff opposes.

## II.     Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility

3

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the well-pleaded facts of the complaint do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### III. Analysis

The parties here dispute a single issue: whether the severance pay that defendant allegedly owes plaintiff constitutes a "wage" or "commission" under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148.

The Wage Act provides that a worker discharged from employment must be paid in full on the date of his termination. Mass. Gen. Laws ch. 149, § 148. The statute applies not only to "wages," which includes vacation and holiday payments, but also to "commissions" that are "definitely determined" and "due and payable." *Id.* The term "wages" is not defined by the statute. However, to qualify as "wages," the amounts in question must be "earned," which is to say that they must be "acquire[d] by labor, service or performance." *Massachusetts State Police Commissioned Officers Ass'n v. Com.*, 462 Mass. 219, 226 (2012) (quoting *Awuah v. Coverall N. Am., Inc.*, 460 Mass. 484, 492 (2011)).

"The basic purpose of the act is to prevent the unreasonable detention of wages." *Weems v. Citigroup Inc.*, 453 Mass. 147, 150-51 (2009) (internal quotation and citation omitted). An employer who violates the Wage Act is subject to potential civil and criminal penalties, injunctive relief, damages, treble damages, and attorney's fees and costs. Mass. Gen. Laws ch. 149, §§ 27C, 148, 150.

4

The Massachusetts Appeals Court has twice held that severance payments do not fall within the ambit of the Wage Act. First, in *Prozinski v. Ne. Real Estate Servs., LLC*, the Massachusetts Appeals Court found that the statute referred only to vacation pay, holiday pay, and "definitely determined" commissions, not to "severance." 59 Mass. App. Ct. 599, 603 (2003). It also held that severance pay was "not earned but contingent upon severance" and that the Legislature did not intend through the Wage Act to protect "professionals enforcing their asserted contract rights." *Id.* Second, in *Platt v. Traber*, the court reiterated those conclusions, relying on its reasoning in *Prozinski* to affirm the Superior Court's dismissal of a Wage Act claim for unpaid severance. 85 Mass. App. Ct. 1114, at *1 (2014) (unpublished).

Other courts, albeit ones that did not address claims for severance, have cited *Prozinski* approvingly. *See Weiss v. DHL Exp., Inc.*, 718 F.3d 39, 47-48 (1st Cir. 2013) (addressing claim for unpaid bonuses but remarking that "courts have held that various forms of compensation fall outside of the scope of the Wage Act"); *Weems v. Citigroup Inc.*, 453 Mass. 147, 150-51 (2009) (addressing claim for unpaid bonuses but noting that "[o]ur appellate courts have held that the act does not cover contributions to deferred compensation plans or severance pay"). Furthermore, the holding of *Prozinski* has been applied by other judges within this district to preclude severance-based claims. *See Discipio v. Anacorp, Inc.*, 831 F. Supp. 2d 392, 396 (D. Mass. 2011) ("[S]everance pay is not covered by the Wage Act according to prevailing state law.").[1]

---

[1] Only a single decision, from the Superior Court, has held that the Wage Act encompasses severance-based claims. *See Juergens v. Microgroup, Inc.*, 2011 WL 1020856, at *2 (Mass. Super. Jan. 28, 2011). That court noted that *Prozinski* had relied on the holding of *Commonwealth v. Savage*, 31 Mass. App. Ct. 714, 716 (1991), in support of the proposition that courts should narrowly construe the Wage Act, and that the Supreme Judicial Court later overruled *Savage* in *Wiedmann v. Bradford Group, Inc.*, 444 Mass. 698, 703-04 (2005). The *Juergens* court therefore reasoned that it should construe the statute less narrowly so as to include severance pay. 2011 WL

Those holdings are controlling on this Court. Accordingly, a claim for unpaid severance is not cognizable under the Wage Act.

Plaintiff nonetheless argues that his severance pay qualifies as "wages" under the statute—specifically, a "commission" that was "due and payable" and "definitely determined." Mass. Gen. Laws ch. 149, § 148. Plaintiff asserts that his severance met those two components because (1) the two conditions of involuntary termination and without cause had been satisfied and (2) the amount of twelve weeks' salary at 100 percent base pay was definitively known. That argument is premised on the contention that the nature and purpose of a particular form of remuneration, not the label applied to it by the employer, determines whether it is covered by the statute. *See Weems*, 453 Mass. at 153-54 (explaining that the "operative fact here is that bonus awards under these programs are discretionary, not because they are labeled bonuses, but because the employers are, apparently, under no obligation to award them"); *see also Weiss v. DHL Exp., Inc.*, 718 F.3d 39, 47-48 (1st Cir. 2013) (considering whether bonus payments qualify as "earned" wages or "commissions").

It is certainly true that labels are not determinative. But even accepting that proposition, the plaintiff must nonetheless prove that the severance payment was "wages." To do so, he must do more than satisfy the "due and payable" and "definitely determined" conditions. Not all remuneration that an employer provides its employees is a "wage." *Roche v. Morgan Collection, Inc.*, 882 F. Supp. 2d 247, 255 (D. Mass. 2012). To the contrary, the Wage Act requires that

---

1020856, at *2.

Plaintiff here raises the same argument. However, the *Platt* decision recently affirmed the principle that the Wage Act does not cover severance, and this Court accordingly will not follow *Juergens*. 85 Mass. App. Ct. 1114, at *1.

wages be "earned" to merit protection. Mass. Gen. Laws ch. 149, § 148; *see Weems*, 453 Mass. at 154; *Prozinski*, 59 Mass. App. Ct. at 603. Here, although part of an employment agreement, the severance pay that plaintiff and defendant agreed to was a contractual obligation, not a "wage" that had been acquired by virtue of plaintiff's "labor, service, or performance." *Massachusetts State Police Commissioned Officers Ass'n*, 462 Mass. at 225; *see Prozinski*, 59 Mass. App. Ct. at 603-04. While plaintiff may seek recourse through a claim for breach of contract, the Legislature did not seek to provide an additional cause of action under the Wage Act. *Id.* at 604. The fact that severance is, in other contexts, considered wages is not dispositive. *See United States v. Quality Stores, Inc.*, 134 S. Ct. 1395, 1395, 1405 (Mar. 25, 2015) (holding that severance payments are taxable wages under the Internal Revenue Code); *Ruzicka v. Comm'r of Dep't of Employment & Training*, 36 Mass. App. Ct. 215, 219-20 (1994) (holding that severance payments disqualify a person from receiving unemployment benefits). The plain language of the Wage Act itself controls and precludes plaintiff's claim here.

**IV.    Conclusion**

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

                                                   /s/ F. Dennis Saylor
                                                  F. Dennis Saylor IV
Dated: June 26, 2014                             United States District Judge